Good morning. Judge Rendell, can you hear us? I can hear you fine, thank you. Okay, thanks. And we're ready to call our first case today. This is Freeman v. Superintendent Fayette State Correctional Institution. You may proceed. Good morning, Your Honors. May it please the Court, Adrian Jaffe on behalf of the Commonwealth of Pennsylvania. At this time, may I please request four minutes for rebuttal? Done. Thank you. Your Honors, the District Court here committed two errors. Number one, it erred in finding a constitutional clause violation where, consistent with the mandates of the United States Supreme Court in Bruton, Gray, and Richardson, Freeman's non-testifying codependent statement was properly redacted to replace Freeman's name with a neutral phrase, while at the same time the statement maintained its narrative integrity and in no way gave the jury any indication that the statement had been altered and the trial court gave a cautionary instruction on numerous occasions. Let's hesitate on that and talk for a minute. Is it right that Freeman and Collier were tried together? Yes, Your Honor, they were. And is it right that everybody knew Miller wasn't the one who was being referenced because it was his statement and everybody knew Teal wasn't the one because his name was actually in the document? Yes, Your Honor. So the two people at counsel table, there's only four people in the mix. How is it that this is consistent with Bruton, Richardson, and Gray when process of elimination tells you there's two people left and the first guy and the second guy have got to be those two guys? Well, with all due respect, Your Honor, process of elimination is not the standard that was set forth in Bruton. It may not be the standard set forth in Bruton, but isn't it the standard set forth in our own investigations of this and in Gray? I mean, when we look at Washington, which specifically called out Travers and said that's just bad law. It's not even reasonable. Are we bound by our own precedent, which trashes Travers and says that's bad law? Your Honor, the state court was bound, not by this court, the state court. What we are asked here to determine whether or not the state court rendered a decision that was contrary to or an unreasonable application of clearly established federal law, which is not the circuit. But what I'm trying to get you to deal with is we've already said that based on established Supreme Court law, Travers is bad law. We've said based on Supreme Court law, Travers is bad law. How can we, based on that, look at this record and say it's OK? Well, Your Honor, I think many of the decisions from this court, including the decision from Your Honor, I'm aware that you wrote the most recent opinion on this issue in the Third Circuit in the Johnson case. They were premised on the fact that, the supposed fact that Travers set forth a bright line rule that any time you have a neutral redaction, regardless of the number of the defendants, that it is in fact OK, pass muster under Bruton as long as there is a cautionary instruction. But that's not what Travers said, and that's not a bright line rule. The Pennsylvania Supreme Court doesn't hold, nor did it hold in Travers, that it was only because a neutral redaction was made in that case. There have to be other factors. The statement has to retain its narrative integrity. There can be no indicia that the statement was, in fact, altered. And as an example, a case of... Wait, stop. What do those two things have to do with the heart of this, which is, as has been said before, if all you have to do is look at counsel table and see, it has to be that guy or those two guys, because they're the only ones left. That seems to be the heart of this. No matter how many additional factors you say are in there, if it's really the case that the simple process of elimination tells you the defendants have to be the ones referred to here, isn't that, like, the end of the matter? No, Your Honor, it's not the end of the matter, because the only reason the jury can determine with certainty that those other two defendants have to be the first person and the second person referenced is because of other evidence of guilt at trial. And the Richardson court expressly stated that you cannot use contextual implication or an evidentiary linkage theory to link the neutral phrases or pronouns used in the statement with the defendant's guilt. The only way in this case that the jury was certain that that first guy and the second guy were, in fact, the people referenced in the statement is from the other evidence of guilt, from the eyewitnesses. I think Judge Rendell is trying to ask a question. Richardson is a very different case. You need to square this with Gray. And the Superior Court in this case, Judge Wecht, however good Judge he is, never mentioned Gray. There, there were only deletions. Here, there's first guy and second guy. I don't know how you can square this with Gray. It's my understanding, Your Honor, that the state courts did, in fact, rely on Gray. In fact, Travers relies heavily and discusses Gray heavily in its opinion. In Gray, the names were deleted and there was a, the prosecutor said blank or deleted or blank space or words to that effect. That was a glaring, obvious altercation in the statement. That's one of the reasons why, or that is the reason why the statement was deemed to be violative or brutal because the court found that while the defendant wasn't specifically named in the statement, the obvious blanks there made it clear to the defendant that there was, in fact, an alteration and, therefore, it was a brutal violation. How is it different from first guy, second guy? To me, it's even worse because you've got first guy sitting there and second guy sitting there. How is it different? Because that's a general neutral phrase. Oftentimes, people talk in generalities, the guy over there, this guy, that guy, the other guy, the first guy. That's not a specific reference to a defendant like the African-American guy sitting there with the shaved head and the long beard and the five earrings in his ear. That's a very specific detailed description that would replace the defendant's name and that would clearly be a brutal violation. But here, we're referring to them as the first guy and the second guy. So you think that that does it, just saying, how about if there was no second guy? How about if this was just a redaction that just said, the other guy, and there was just one person at the table? Your Honor, I don't want to say it's a bright-line rule that that would be sufficient. There's other things that have to be taken into consideration. So you think that would be okay? There's just two people, the person giving the statement and the person at the fence table, and you use the phrase, the other guy, and you think that's okay? You think that's consistent with Bruton? Your Honor, I do, in fact, think that would be consistent with Bruton, as long as the cautionary instruction was given. And with Gray? And with Gray, yes, because that's not an obvious alteration like existed in Gray. Isn't it an obvious alteration when Gray says, a juror who does not know the law and therefore wonders to whom the blank might refer need only lift his eyes to Jones sitting at counsel table to find what will seem the obvious answer. You think that by saying the other guy instead of blank, that that's constitutionally different? I do believe it's constitutionally different. And if you dig a little deeper into Gray, it discusses it's not just the fact of an inference, you have to look at the kind of inference. It's the only inference. In the hypothetical I'm giving you, there is no other inference, is there? There is a blank space there, so obviously something was deleted. So the obvious implication from the face of the statement itself that someone else is being pointed to, that person, the defendant, in your hypothetical, me and the other guy did this, there's no obvious alteration. So there's no inference from the face of the statement itself. The only way there can be an inference is if you look at it in the context of the other evidence introduced at trial and Richardson says you can't do that. Even if you had nothing else, isn't the only inference in the hypothetical I'm giving you that the other guy is the defendant? What other inference is there? I don't know, Your Honor. I don't know. But the inference has to be clear from the face of the statement. And that's not clear because looking at it, there's no obvious alteration, so the jury doesn't know that without the other evidence of guilt. How do you distinguish that from Washington where the substitution was with the guy who went into the store and the driver? That's exactly what we have here. And we held it was an unreasonable application there to say that, you know, a Supreme Court precedent. And we've held that the situation exactly like this is an unreasonable application. Have we not? Your Honor, this Court has held this. However, as I indicated, the standard here on federal habeas review is whether the state court decisions were contrary to or involved in unreasonable application of United States Supreme Court precedent. With all due respect, not precedent to this Court. And we have already held that it is. And, therefore, our precedent dictates to us that we must hold similarly in this situation that it was. Well, I would distinguish Washington on numerous grounds. One, the defendant there wasn't referred to as a nonspecific term like the other guy or the other person. He was specifically referred to as a driver. And I think the other person was referred to as the guy who went into the store. So in here we're speaking in more generalities, which is permissible pursuant to Bruton, Gray, and. Could you move on to the harmlessness aspect? The state court did not reach harmlessness, obviously, because it found that it wasn't harmless or that it was harmless. So we have to decide that de novo. How did Judge Robreno err in his conclusion regarding harmlessness? Well, Your Honor, I would submit that the judge simply paid lip service to the general standards for harmless error. The court did not go through each of the Van Arsdale factors, which are imperative. It's imperative to do so when undertaking an analysis. The court did not review the record in light of the evidence as a whole, which the Supreme Court of the United States mandates needs to be done in a harmless error analysis. Instead, the court just extracted numerous isolated pieces of evidence. And after each one said this wasn't enough evidence in and of itself, apart from Miller's statement. Which are the pieces of evidence you most rely on in this regard? Well, Your Honor, in this case, there was abundant evidence of the defendant's guilt, apart from Miller's statement. One, we had Rashid Teal's testimony, which directly implicated him in the crime. And Judge Robreno cited to that testimony at length and said, you know, it was riddled with inconsistencies. He changed his story three times, right? He did, Your Honor. He minimized his involvement. He continued to minimize his involvement. And then by the time of his third statement, he admitted it. Which I would submit oftentimes defendants, co-defendants do that. And then he pled guilty. So the court also referenced that. Nonetheless, his testimony is corroborated in part by the phone records, the cell site location information. Testimony from the victims inside the house of the robbery. And testimony from three witnesses who observed the four defendants outside the porch of the residence huddled together for 15 minutes. When we, it's reasonable to infer at that time it's when they were planning the robbery. That's consistent with Miller's statement. That's consistent with Teal's statement. That's consistent with one of the three witnesses who was at the house. So we have the. The first Van Arsdale factor is the importance of the witness's testimony in the prosecution's case. Would you concede that Miller's statement was highly important to the prosecution's case? Not at all, Your Honor. I would submit that Miller's statement added little to the compelling evidence against Freeman. It was largely cumulative of the other evidence presented at trial. And, in fact, key aspects of the statement were corroborated by the other witnesses I named. Not just Teal, who admittedly was another co-defendant, but the three eyewitnesses, the cell site location information, which placed Collier and Freeman in the two-mile radius of the vicinity of where the kidnapping was, and then 15 minutes later placed both of their phones in the vicinity of San Antonio Station Road, I believe it was called, where the murder occurred. Did Freeman have an alibi that put him in the same area? No, Your Honor. And that's another thing. That was an issue that was raised in Federal Habeas, ineffectiveness for failing to pursue an alibi defense. Did it put him in the same area, in the same cell site area? No. The Wawa. Was the Wawa in the same cell site area? I believe it would be in the same cell site area of the San Antonio Station Road because it was just. . . I'm not going to say it was certainty. It was about a minute and a half away, so it probably was, but he did not get there until 2-28. The murder is alleged to have occurred at 2-14, 14 minutes before, and our detective who took the stand testified that it took at minimum, or it took eight minutes to get. . . I understand you had arguments for why the alibi wouldn't hold water, but the fact that he's got pictures of himself at the Wawa in the same cell site area, doesn't that hit the cell site evidence pretty significantly? No, Your Honor, because that was 14 minutes after the murder is alleged to occur, and plus his phones were at the location of the victim's house at or around the time he was kidnapped, which was about 15 minutes before the murder, and then. . . No doubt you've got evidence. Commonwealth certainly has evidence. The only question is if we thought there was a brutal violation, whether that was harmless, and I think we're just trying to get you to grapple with there's inconsistencies in Thiel's testimony. There's cell site evidence, but he's got an explanation for where he was, whether you think it's good or not, he's got it. And he's got the assertion, or at least the argument, that Miller's testimony is the most crucial piece in the whole thing because it fingers him specifically. Those are things he's pointing to that he would say under Van Arsdale, you've got to be left with a doubt about this. But under Van Arsdale, not only do you look at whether or not that witness's testimony was important, you look at whether the evidence was cumulative or corroborative of other evidence, or you look at the overall strength of the case, and all of those factors weigh in favor of the Commonwealth, except the one factor, was there an ability for cross-examination? Obviously there wasn't. And, Your Honor, Miller's statement said nothing more than what Rasheel's testimony was, and that was largely corroborated by those three disinterested witnesses, and we have abundant evidence of consciousness of guilt here as well. Not only do we have the defendant throwing his phone in the trash can when the police went to his house, but we have him taking his car to get thoroughly detailed on the night of the murder, and when the police went to pick it up five or six days later, it was in the process of being cleaned. All doors were opened, and there were cleaning products inside and things of that nature. This wasn't something that he did on a regular basis. Your Honor, there was testimony that he was planning on selling the car and something was wrong with it, so that's why he took it down to get clean. But the sources from that testimony were his girlfriend, his cousin, and his cousin's business partner. So I would submit that would be self-serving evidence. He went immediately from the Wawa down to take that car to get detailed. It didn't get detailed until a few days later, but nonetheless, it was down there getting detailed. And then coincidentally, he had money to take himself, his wife, and his child out to dinner that day to pay cash, when the evidence revealed that the night before the murder, he asked his cousin for money because he said he was broke. His cousin didn't give him money. That night, he had money to pay for dinner and cash, and then a few days later when he was arrested, he had $800 in his pocket. So that's large circumstantial evidence of the defendant's guilt, and I would submit there's abundant evidence apart from the statement. We got you. Do you have any further questions, Judge Rundell? I do not. Thank you. Okay. We'll have you back on rebuttal. Thanks very much, Ms. Tappe. Thank you, Your Honor. And now we'll hear from counsel for the appellee. Good morning. May it please the Court. I'm Joanne Heisey on behalf of Appellee Charles Freeman. I'm happy to answer any questions that the panel has about the Confrontation Clause violation, but I'd like to start by addressing the harm of Miller's statement. This was a highly contested case with evidence that supports Mr. Freeman's innocence and that certainly at least raises doubt about his involvement in this offense. And the Commonwealth's evidence outside of Miller's statement was either suspect or circumstantial, and so Miller's statement is really the only evidence that came in that was uncontested and unimpeached and that points to Mr. Freeman because there was no opportunity for cross-examination. Why don't you go ahead and take directly Ms. Tappe's assertion that you've got multiple points of corroboration here. You've got Thiel's statement, which supports Miller's statement. You've got the I have no money and now I've got a bunch of money, a whole wad of cash. You've got I'm getting the car cleaned. You've got the cell site information and the testimony that he couldn't possibly, that it was easy for him to make it to the Wawa after the murder. You've got the testimony of the witnesses about the kidnapping. You've got all these things that show Freeman is guilty and very guilty of a heinous crime. So even if you took Miller out, so what? What's wrong with that rendition of the facts, especially if we're supposed to be taking some kind of a view that juries are allowed to weigh evidence in their decisions or do some deference? Sure. So as far as Thiel's testimony, as Your Honor pointed out, he gave several prior inconsistent statements. He was testifying in exchange. But all of his inconsistent statements had to do with his own involvement. He tried to downplay that and succeedingly he could downplay it less and less. But his statements about Freeman's involvement was always consistent, was it not? Respectfully, Your Honor, I don't think that's accurate, because when he first implicated Freeman in the statement, he had left Collier out of the statement entirely and implicated Freeman as the person who went into the house and was actually the person who shot Mr. Barwi. So his story changed also with respect to the participants and what they did in this offense. Well, but the bottom line was he had Freeman involved to a great degree and a lesser degree. But nonetheless, he was consistently involved and he was the driver at all times, was he not? I don't remember if he implicated him as the driver in every statement. But at any rate, his story each time changed with respect to the participants, their roles. And each time he gave a new statement, he said, well, I lied in the other statement. Now I'm telling the truth. And he did this four separate times before trial. But Freeman was in it the whole time, right? Unlike Collier, who wasn't in it at some point, Freeman was always in it in Mr. Thiel's testimony, right? I think starting with the second statement, I think that's true. There's one piece of evidence that hasn't been mentioned that, to me, I don't know where to put it, if not on the side of harmlessness. And that is that we have phone calls between Collier and Freeman, 126, 152, 154, right at the moment when Collier is clearly doing this. And these phone calls last 10 seconds, 15 seconds, 20 seconds. They're very consistent with bring up the car, with something momentary in the heat of this crime being committed. And I can't put them anywhere other than implicating Mr. Freeman very seriously as a driver of the car in what was going on here. Well, that was certainly the Commonwealth's theory. But as the district court found, it can also be consistent with Mr. Freeman's innocence, where these two called each other frequently several times a day. And we don't know what was said on those phone calls. That's not helping him either, because he denied that he really knew Collier. He kind of said, well, yeah, I heard about him, but I didn't really know him that way. And then in the supplemental materials here, he says, oh, yeah, we talked all the time. But why would you have a 15-second phone call with someone who you really want to talk to all the time? I don't know how to explain that. Well, also, Your Honor, I think that the reliability of the cell phone records is not entirely sure, because we also have Mr. Freeman, while he's on video at Wawa, he's talking on a cell phone, and his cell phone records don't reflect any phone call at that time. So, you know, as the district court found. One thing for a cell phone not to record something, it's another thing for it to show things that you're saying maybe never existed. I found that part, but in any event. The other thing is the cleaning of the car. The car wasn't just being detailed. It was being hosed down, basically, in a way that doesn't seem to be normal. When they got there, the doors were open and it was totally wet. That, to me, seems questionable. I guess what I'm asking, what is it that should put us in grave doubt? What is the aha moment here that should say, aha, I am in grave doubt about Freeman's guilt? Well, at the end of the day, the Commonwealth is pointing to all this evidence outside of Miller's statement to show how it could still support a guilty verdict. But that really isn't the test here. It's not a sufficiency of the evidence test. The question is, did the statement impact the jury's verdict, ultimately? And I think it's clear that the answer has to be yes, because you have Teal's testimony, which we know is suspect to begin with. The rest of this evidence is circumstantial and, as the district court held, could also be consistent with Freeman's innocence. You also have affirmative evidence supporting a finding of innocence, because you've got one of the witnesses at King Street who says that he left the house alone in his car. You've got another one of the witnesses from King Street who says that, following the fence, only Teal and Collier returned, just the two of them, in a green car. And then you've got Mr. Freeman on video at the Wawa, close in time to when this offense occurred. And so with all of that, Miller's statement really becomes a linchpin in the case, because it's the only evidence that came in that was uncontested, unchallenged, because it went completely uncross-examined. And, in fact, the prosecutor's argument in closing really underscores the harm here, because she points to Miller's statement as corroborating the other evidence. She says, this is how we know Teal was... How can that weigh against them? That was evidence in the case at that point. Any prosecutor would be saying, look at Miller's statement, right? It would be prosecutor malpractice not to say that. So I'm not sure where that gets you. What I am curious about is whether... You said a minute ago, and I think quite accurately, what the standard is we should be looking for, and that it's not sufficiency of the evidence. But doesn't the sufficiency of the evidence actually impact whether or not we should be thinking Miller's testimony really made that much difference? If you've got a testifying co-defendant, a testifying co-conspirator in the crime, and you've got the cell site evidence, you've got... I'm getting this car cleaned and scrubbed completely. If you've got the testimony of people at the scene of the kidnapping, if you've got all those things together... And Collier is identified by the people at the scene of the kidnapping, and he's clearly linked to your client here, Mr. Freeman. If you've got those things, it's not just that it's sufficient that you're starting to say, well, that's real strong. If Miller's statement had never been in there, this would have been a conviction. Is that an inaccurate way to look at this? Well, the question is really just did it impact the jury's deliberations? And in fact, we don't even have to be sure that it did. We just have to have a grave doubt. Well, I don't think... You say impact, but I don't think the test is impact. It is, are we in grave doubt? And that's different from impact. Are we in grave doubt as to whether it affected the jury's verdict? And I think here we have to be, because, for instance, just as in Washington, we have this statement coming in to corroborate the testimony of a charged co-conspirator that, standing on its own, has significant credibility problems. But Miller's statement has the impact of corroborating and bolstering that testimony, and that's what makes it so especially harmful. Well, why don't we use this, unless Judge Schrick has got a question about this? You said that you'll answer questions about the Bruton. Why don't you go ahead and take on Ms. Chappie's assertion that Travers is good law. It's not a bright-line rule, and all the fight here depends on contextual clues that we're not allowed to look at. Go ahead and address that, if you would. The statement on its own here very clearly violated the Confrontation Clause, because you've got a statement that goes on for over 30 pages of testimony and is repeatedly referring to the first guy and the second guy. Obviously, no one actually talks like that, and so it had to have been obvious to the jurors that this was a redacted statement. And like in gray, all they had to do was lift their eyes to counsel table and know who this statement was referring to. Does it matter that you wouldn't know which of the two was doing which? No, I don't think it does matter here, Your Honor, because both the first guy and the second guy were implicated as being guilty in the statement.  The limiting instruction? Yeah, Your Honor, I really don't think that that factors into the analysis, because the whole crux of Bruton is that a limiting instruction is insufficient to cure the risk that the jurors are going to take this statement into account against the defendant. I want to make sure we understand the standard, because you keep talking about impact. Is it not that the error had a substantial and injurious effect or influence? Yes, that's right, Your Honor. And if we have a grave doubt that it did, then we have to find that the error was not harmless. If the panel has no additional questions, then I'll see the rest of my time. No, I think we thank you for your argument, Ms. Heise, and we'll go ahead and hear from Ms. Jaffe on the phone. Thank you. Good morning again, Your Honors. Just a few quick points. Your Honor, the sufficiency of the evidence is, in fact, part of the standard for harmless errors. That's one of the van Arsdal factors, the final factor of the overall strength of the prosecution's case. So that is, in fact, part of the standard. In addition to the evidence I set forth previously, setting forth the abundant evidence of guilt against the defendant, I just want to direct Your Honor's attention to the Johnson case that Judge Rendell issued the opinion on a year or so ago. In that case, ultimately they found that the error was not harmless, and in part they relied on the fact that the jury deliberated for six days. And Judge Rendell in that opinion said, and I quote, We join our sister circuits in holding that the length of jury deliberations may be one consideration in assessing the strength of the prosecution's case. And that was in the terms of a harmless error analysis. Here the jury deliberated for three hours, if that, and some of that time was ordering and eating dinner. So I would submit that factor, too, would weigh in favor of a finding of harmless error. And regarding Thiel's statements, other than his first statement when he basically said he wasn't involved at all and didn't know anything about it, every other statement after that he said that Freeman and Collier were involved in it. I think he had a closer connection to Omar Miller, so he didn't put Miller's name in it until the very end. But Freeman was always referenced in all of his statements with the exception of the first one when Thiel said he didn't know about it at all. And then I want to address a point that Your Honor, Judge Rendell brought up earlier about the call detail records. Those are extremely important, regardless of whether or not Collier and Freeman were friends and talked often. And I would submit that Freeman said, I don't know him like that, we're not really friends. But the timing of the phone calls on the day of the robbery and the kidnapping and the murder is extremely important. There were a couple calls at 107 from Collier to Freeman when they were in the same cell tower sector. Those were right when the three co-defendants went in the house. Again, Freeman was at the car. So a reasonable inference is that Collier is calling Freeman, telling him what's going on, okay, we'll need you in this amount of time. Half hour later when they're done, and by the way, the witnesses inside the house confirmed that one of the defendants was on his phone talking to someone during some of this incident. And then the final three phone calls at 150, and the witnesses in the house testified that Collier was on the phone.  Again, a reasonable inference is he was calling him to say, okay, we're done, we're bringing the guy out, come in, come get us. So then I guess it took him a minute or two to get back around the circle. So then at 152 and again at 154, 10-second conversations calling Freeman to Collier, saying we're here. And then Collier says, rides here and goes outside. Obviously he knew. No question you've got evidence. I mean, I don't think anybody is asserting that there's not evidence to support the prosecution's case. But Ms. Heise points out that we're not talking about the sufficiency. And you, I think, would agree, it's just not about the sufficiency of the evidence. Sure, but that's part of it. But yes, the fifth factor is that. Here, is it, should it make any difference in our analysis that these cases continue to come up even after what we've said in Washington and Johnson? And the continued adherence in the state court to Travers after this court has tried to say that's not a reasonable application of Supreme Court law? Or is that an irrelevancy in what we should be thinking about as we're focused on this case? I think that's an irrelevancy in my opinion. But I will say, again, I'm going back to this Travers, and it's not a bright line rule. Because the Supreme Court in Pennsylvania, even after Travers, they've found in cases where there's a neutral redaction like the other person or the other guy, that that's a brutal violation. Because there's other factors to take into consideration. Does that lead a jury to believe that there's an obvious alteration? And I just want to bring up one case in that regard, Commonwealth v. Markman. It was six or seven years after Travers. In that case, the defendant's name was substituted with the other, I believe it was the other guy or the other person. Now, you would think if what this court is saying, Travers implements a bright line rule, you would think that that would be okay. But the court found that was not okay. Because the way it was read in that case, it was a recording. And every time the other person was said, it was a voiceover. So it said other person in a different inflection or a different voice. So the jury knew that there was an obvious deletion there. So the fact so Travers does not say that any time you have the other guy that that's sufficient. The court looks at other factors. Did the jury have the whole Miller statement? The jury did have the whole Miller's. Oh, this whole statement was read. I don't believe it was given to the jury during deliberations. The entirety of it. The entirety of it. And I will say in that statement, by the way, Miller minimizes Freeman's involvement in it, unlike Teal. I want you to answer Ms. Heisey's point that nobody keeps saying the first guy and the second guy over the course of a 30-page statement. So, you know, if that's true, is that any different than the voiceover? Yes, because the voiceover is clearly letting the jury know there was an alteration. Sure, you can say, hmm, perhaps some jurors thought that maybe something was fishy here. But the only way they knew definitively that there was, that these first guy and second guy did, in fact, refer to those defendants, is with the other evidence at trial. And Richardson expressly said that that's not a brutal violation because evidentiary linkage and contextual implication is not allowed. Okay. Well, we thank counsel for their argument. We've got the matter under advisement. Thank you, Your Honors. Thank you. Have a good day.